UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ADVANCE PRODUCTS & SYSTEMS, INC.,** | * | **CIVIL ACTION NO. 2:14-cv-2456** |
| | * | |
| v. | * | **JUDGE MINALDI** |
| | * | |
| **CCI PIPING SYSTEMS, L.L.C. D/B/A CCI PIPELINE SYSTEMS** | * | **MAGISTRATE JUDGE KAY** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment (Rec. Doc. 26) filed by CCI Piping Systems, LLC ("CCI"), an Opposition (Rec. Doc. 28) filed by Advance Products & Systems, Inc. ("APS"), a Reply (Rec. Doc. 29) filed by CCI, and a Supplemental Memorandum (Rec. Doc. 33) filed by APS. For the following reasons, CCI's motion will be **DENIED**.

### FACTS & PROCEDURAL HISTORY

On May 18, 2004, APS was granted Patent No. US 6,736,166 B2 ("'166 Patent")[1] for a casing spacer.[2] In April 2011, Cliff Sheffy, an independent sales representative who sells products for APS and other vendors, informed Thomas Forlander, the President and owner of APS, that he believed CCI was manufacturing a casing spacer that infringed the '166 Patent.[3] Sheffy sent Forlander a sample of CCI's casing spacer, and Forlander made a determination that

---

[1] Ex. 1, United States Patent (Rec. Doc. 1-2).
[2] "A casing spacer, also known as a casing insulator, is a steel band that facilitates the installation of water or sewer pipelines through an underground conduit (a casing pipe). The casing spacer prevents flexing or breaking of the pipelines and further secures the pipelines within the casing pipe to prevent leakage. One of the main components of a casing spacer is a plastic 'runner', which varies in size as it depends on the size of the casing pipe at issue. The main components of a casing spacer are uniform among all manufacturers." Memo. in Supp. of Mot. for Summ. J. (Rec. Doc. 26-1), at 7 n.4.
[3] Ex. APS-1, Aff. of Thomas Forlander (Rec. Doc. 28-1) ¶ 16; *see also* Ex. APS-4, Aff. Of Clifford L. Sheffy (Rec. Doc. 28-4) ¶ 1.

1

the casing spacer infringed the '166 Patent.[4] APS notified CCI of its finding and out-of-court correspondences were exchanged.[5] On August 8, 2014, APS filed suit against CCI alleging that it is infringing on its '166 Patent.[6] CCI filed the present motion on May 22, 2015, arguing that (1) laches bars APS from recovering pre-suit damages for the alleged patent infringement because APS had knowledge of CCI's products and manufacturing activities no later than 2004 but waited until 2014 to bring suit, and (2) APS is equitably estopped from enforcing its '166 Patent against CCI because CCI detrimentally relied on APS's non-enforcement of its patent for roughly ten years.[7]

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

---

[4] Ex. APS-1, Aff. of Thomas Forlander (Rec. Doc. 28-1) ¶ 16, 19. APS has provided photographs of the allegedly infringing casing spacer. Ex. APS-1, Attach. I, Photographs of Sample CCI Casing Spacer (Rec. Doc. 28-1), at 60-63.
[5] Ex. APS-1, Aff. of Thomas Forlander (Rec. Doc. 28-1) ¶ 19.
[6] Compl. (Rec. Doc. 1).
[7] *See* Mot. for Summ. J. (Rec. Doc. 26).

2

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n. 1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little*, 37 F.3d at 1075).

## LACHES

Laches is an equitable defense that bars pre-suit damages for patent infringement "where the plaintiff has unreasonably and inexcusably delayed in prosecuting its rights and where that delay has resulted in material prejudice to the defendant." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1325 (5th Cir. 1980). To successfully invoke laches, a defendant must establish: "(1) that the delay was unreasonable or inexcusable; (2) that the defendant has suffered injury or prejudice as a result of the delay." *Id.* at 1326 (citations omitted). "Where the plaintiff's delay has exceeded the statutory six-year period, the delay is presumed unreasonable, and the plaintiff has the burden of justifying the delay." *Id.* "The reasonableness of the behavior of the person against whom laches is asserted depends on the facts of the particular case." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1162 (Fed. Cir. 1993).

3

"It is well-settled that the knowledge relevant to the laches inquiry is the plaintiff's knowledge of the facts and features of the accused product that form his infringement allegation." *LendingTree, LLC v. Zillow, Inc.*, No. 3:10-cv-00439, 2014 WL 1309305 (W.D.N.C. Mar. 31, 2014) (citations omitted). "To determine the length of plaintiff's delay, the court must look not to the date on which the patent issued but rather to the time at which the plaintiff knew or, in the exercise of reasonable diligence, should have known of the defendant's alleged infringing action." *Studiengesellschaft*, 616 F.2d at 1326. "[C]ourts impose a duty on patentees to police their patent rights and will impose constructive knowledge based on the required reasonable, diligent inquiry." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 520 (D. Del. 2010).

CCI identifies the casing spacer at issue as the "runner on band Model CSS (Casing Spacer Stainless) in which the runners are directly mounted to the steel band by means of nuts and bolts."[8] However, APS disputes that the Model CSS casing spacers that CCI has been marketing are the same as the casing spacer it has identified as infringing the '166 Patent.[9] The two aspects of the allegedly infringing casing spacer that APS focuses on are: (1) field-interchangeable runners (2) that are attached directly to the steel band with bolts, as opposed to being attached to risers.

## Actual Notice

CCI argues that APS has had actual notice of the allegedly infringing activity since 2004 for several reasons. First, APS filed a Petition for Injunctive Relief on March 8, 2004, seeking to enjoin CCI from using information "to compete on the same or similar products manufactured by [APS,]" and to enjoin newly employed CCI employees from "engaging directly or indirectly in

---

[8] Reply (Rec. Doc. 29), at 2.
[9] *See* Ex. APS-1, Attach. I, Photographs of Sample CCI Casing Spacer (Rec. Doc. 28-1), at 60-63.

the design, manufacture, advertisement, sale, warehousing or distribution of any products or services which are identical or similar in design, use or function with those of [APS]."[10] In response, APS asserts that its '166 Patent had not even been issued when the Petition for Injunctive Relief was filed, and that it is impossible to discern which specific products were being referenced.

Second, APS filed an Amended Petition for Damages on December 9, 2004, which states that "CCI has duplicated Advance Products' designs for casing spacers and mechanical pipe seals."[11] Again, APS responds that there have been several competing types of casing spacers distributed by APS and CCI, and that it is impossible to discern which specific products are being referenced in the Amended Petition for Damages.

Third, CCI alleges that in a 2004 corporate deposition JoAnn Forlander, APS's then CEO, confirmed full knowledge of the alleged facts now supporting its current patent infringement claim.[12] APS asserts that the corporate deposition merely addressed casing spacers in general and a specific type of casing spacer known as an integral casing spacer, not the casing spacer at issue in this suit. Moreover, during the deposition JoAnn Forlander stated that APS was not alleging that CCI was infringing on its patent at that time, and an affidavit of JoAnn Forlander states that she was not aware of any infringing casing spacers being manufactured by CCI at the time of the corporate deposition.[13]

Fourth, in a writ application to the Louisiana Supreme Court APS stated that "the Lafayette Daily Advertiser published a photograph of casing spacers that appeared identical to

---

[10] Ex. D, Pet. for Inj. Relief (Rec. Doc. 26-5), at 9.
[11] Ex. F, Am. Pet. (Rec. Doc. 26-7) ¶ 34.
[12] See Ex. C, JoAnn Forlander Depo. (Rec. Doc. 26-4).
[13] See Ex. APS-3, Aff. of JoAnn Forlander (Rec. Doc. 28-3).

APS's, but which were purportedly the product of CCI."[14] In response, APS offers an indecipherable copy of the photograph,[15] and an affidavit of Thomas Forlander which states that the casing spacers depicted in the photograph are not the type of casing spacer protected by the '166 Patent.[16]

Fifth, APS entered into a Mutual Release Agreement with CCI on November 13, 2007.[17] However, APS contends that the suit it settled, as originally filed and as amended, never included a patent infringement claim under the '166 patent, and an affidavit of Thomas Forlander states that he was unaware of any patent infringement when the Mutual Release Agreement was entered into.[18]

CCI has failed to demonstrate that there is no genuine dispute as to whether APS had actual notice of the allegedly infringing activity. The Petition for Injunctive Relief, Amended Petition for Damages, and writ application address casing spacers in general and are not specific enough to prove that APS had actual knowledge of the allegedly infringing activity in this case. Likewise, the Mutual Release Agreement does not directly address claims of alleged patent infringement of casing spacers. Moreover, the deposition testimony is vague, and both Thomas Forlander and JoAnn Forlander stated that they were not aware of any infringement of Patent '166 in 2004. Thus, CCI must show that APS had constructive notice if it is to prevail.

<u>Constructive Notice</u>

According to CCI, APS had constructive notice of its allegedly infringing behavior because it had knowledge of CCI's products, business lines, and marketing activities. First, CCI argues that the casing spacer industry is relatively small, with only ten such manufacturers

---

[14] *Id.*
[15] Ex. J, Lafayette Daily Photograph (Rec. Doc. 28-1), at 66.
[16] Ex. APS-1, Aff. of Thomas Forlander (Rec. Doc. 28-1), at 9 ¶ 21.
[17] *See* Ex. H, Mutual Release Agreement (Rec. Doc. 26-9).
[18] Ex. APS-1, Aff. of Thomas Forlander (Rec. Doc. 28-1), at 4 ¶ 5.

nationwide, and only three major trade shows that are routinely attended. According to CCI, the Model CSS "has not been materially changed in fourteen (14) years," and therefore APS has had constructive knowledge of the Model CCS. APS responds that CCI has not displayed the casing spacer at issue on its website, in its product brochures, or at trade shows, and the size of the industry is irrelevant.

For example, APS notes that in CCI's 2006 product brochure[19] and 2008 product brochure,[20] the Model CSS is depicted as having a metal riser/non-metal runner combination. Moreover, in the "Physical Properties" description section for the Model CSS in both the 2006 and 2008 product brochures it states that "[a]ll risers shall be welded to the shell by MIG welding."[21] Next, APS directs the court's attention to a series of schematics in the 2006, 2008, and 2013 product brochures. APS alleges that in the 2006 and 2008 product brochures, the schematics clearly show the runners attached to risers,[22] and it is only in the 2013 product brochure, presumably released after this case was filed, that the schematics do not show the runners attached to risers.[23]

Furthermore, APS contends that CCI website pages do not display Model CSS casing spacers that infringe the '166 Patent. Webpages from 2004 and 2006 contain photographs of Model CSS casing spacers that have metal risers attached to the band, with black runners attached to the top of the metal risers.[24] The webpages also contain a description of the Model CSS casing spacer which states that the "runners shall be attached to support structures (risers) . .

---

[19] Ex. APS-1, Attach. F, 2006 Product Brochure (Rec. Doc. 28-1), at 43.
[20] Ex. APS-1, Attach. G, 2008 Product Brochure (Rec. Doc. 28-1), at 51.
[21] Ex. APS-1, Attach. F, 2006 Product Brochure (Rec. Doc. 28-1), at 45; Ex. APS-1, Attach. G, 2008 Product Brochure (Rec. Doc. 28-1), at 53.
[22] Ex. APS-1, Attach. F, 2006 Product Brochure (Rec. Doc. 28-1), at 46; Ex. APS-1, Attach. G, 2008 Product Brochure (Rec. Doc. 28-1), at 54.
[23] Ex. APS-1, Attach. H, 2013 Product Brochure (Rec. Doc. 28-1), at 59.
[24] Ex. ASPS-2, Website Pages (Rec. Doc. 28-2), at 10-11 and 15-16.

. . ."[25] Finally, the artist's depiction and schematics of the Model CSS casing spacers on the webpages are the same as those in the 2004 and 2006 product brochures described above.[26]

Second, CCI directs the court's attention to a writ application to the Louisiana Supreme Court in which APS stated that "CCI Texas manufactured pipe casings on a small scale as compared to APS, but CCI in Breaux Bridge quickly became a fierce competitor with APS for its market share of that same product."[27] APS replies that it is impossible to discern which products are being referenced.

Third, CCI asserts that APS had constructive knowledge because certain cities around the country require dissemination of a standard product list to all approved and registered casing spacer manufacturers in that city, and thus APS would have been able to see the products offered by CCI in that city.[28] APS responds that the casing spacer product identified in Exhibit J as Model CSS is not the type of casing spacer at issue in this case.

Fourth, CCI argues that the Lafayette area is small and there are only two local competitors, APS and CCI, and that APS has acknowledged that CCI was a "fierce competitor with APS." APS responds again that CCI has not displayed, and does not display, on its website, or in its product brochures, or at trade shows, the casing spacer that allegedly infringes on the '166 Patent.

Fifth, CCI contends that it has been publicly recognized for its work as a casing spacer manufacturer.[29] APS responds just because CCI is a publicly recognized casing spacer manufacturer does not mean that APS had knowledge of the allegedly infringing casing spacer.

---

[25] *Id.* at 11 and 16.
[26] *See id.* at 7, 12, and 17.
[27] Ex. G, Appl. For Supervisory Writ (Rec. Doc. 26-8), at 9.
[28] *See* Ex. J, City of Austin Standard Products Lost for Casing Spacers (Rec. Doc. 26-11).
[29] *See* Ex. K, 2007 Times-Picayune Article (Rec. Doc. 26-12).

Sixth, CCI argues that runner on band casing spacers have been prevalent in the casing spacer industry. Without going into much detail, APS replies that CCI failed to offer any information indicating that any of those casing spacers would infringe the '166 Patent. This argument appears to be more relevant to an Inter Partes Review proceeding than it is to the present motion.

In essence, APS denies that it had constructive knowledge of any allegedly infringing casing spacers because CCI did not openly market the casing spacer at issue, and CCI has failed to provide any webpages, schematics, description, or photographs that clearly show or describe a Model CSS casing spacer that has (1) field-interchangeable runners (2) that are attached directly to the steel band with bolts, as opposed to being attached to risers. The ambiguous schematics issued after the commencement of this litigation are not sufficient to demonstrate APS had constructive knowledge. Finally, just because CCI is a known competitor in a small market does not necessarily mean that APS has constructive knowledge of every single one of CCI's products regardless of how openly they are marketed. Thus, the court finds there is a genuine issue of material fact as to whether APS had actual or constructive knowledge of the allegedly infringing activity in this case.

## EQUITABLE ESTOPPEL

In the context of patent infringement claims, equitable estoppel "forecloses the patentee from enforcing his patent prospectively through an injunction or through damages for continuing infringement." *Studiengesellschaft*, 616 F.2d at 1326 (citations omitted). Estoppel bars the patentee's claim when: "(1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer

would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010). For the first element, the "patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992).

CCI argues that APS's action and inaction spanning over ten years misled CCI into reasonably believing that APS would not enforce its patent against CCI. The court previously found that CCI has failed to prove that APS had actual or constructive notice of the alleged infringement for the purposes of the present motion, and thus CCI has not satisfied the first element of equitable estoppel by showing APS engaged in misleading conduct in regard to the period of time before April 2011, the date when APS asserts that it became aware of the infringing casing spacer. However, CCI also alleges that APS engaged in misleading conduct after April 2011 because it sent three cease-and-desist letters between February 2012 and February 2013 but waited for thirteen months before it finally filed suit. The court need not determine whether that inaction was misleading because CCI has failed to prove the third element, that it would be materially prejudiced if APS were allowed to proceed, for that period of time. According to CCI, in 2013 it relied on APS's inaction and invested $181,000 and expanded its warehouse by an additional 6,250 square feet. However, CCI admitted that the type of casing spacer at issue here accounts for a very small portion of its overall production,[30] and it is unclear how much of the spending after April 2011 is related to that type of casing spacer. Thus, the court finds there is a genuine issue of material fact as to whether CCI would be materially prejudiced if APS were allowed to proceed with its suit in regard to its conduct after April 2011.

---

[30] "[O]nly 4.8% of CCI's casing spacer sales are runner on band spacers . . . ." Reply (Rec. Doc. 29), at 4 n.2.

## CONCLUSION

The court finds that there is an issue of material fact as to whether (1) laches bars APS from recovering pre-suit damages for the alleged patent infringement and (2) APS is equitably estopped from enforcing its '166 Patent against CCI because CCI detrimentally relied on APS's non-enforcement of its patent. Thus, the motion for summary judgment will be **DENIED**.

Lake Charles, Louisiana, this 10 day of _____May_____, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE