# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ADVANCE PRODUCTS & SYSTEMS, INC. | * * * | CIVIL ACTION NO. 2:14-CV-2456 |
| VERSUS | * * | JUDGE TERRY A. DOUGHTY |
| CCI PIPING SYSTEMS, L.L.C. D/B/A/ CCI PIPELINE SYSTEMS | * * * * | MAG. JUDGE KATHLEEN KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## RULING

Before the Court is a Motion for Summary Judgment filed by Defendant CCI Piping Systems, L.L.C. d/b/a CCI Pipeline Systems ("CCI"). [Doc. No. 57]. CCI seeks dismissal of all claims against it brought by Plaintiff Advance Products & Systems, Inc. ("APS") in this patent infringement suit based on the doctrine of res judicata, or alternatively, pursuant to a prior settlement agreement. *Id.* Also before the Court is a Cross-Motion for Partial Summary Judgment filed by APS. [Doc. No. 72]. APS seeks dismissal of CCI's affirmative defenses based on the doctrine of res judicata and pursuant to a prior settlement agreement. *Id.* Both motions are opposed. [Doc. No. 67; Doc. No. 76]. For the following reasons, both motions will be **DENIED**.

## I. FACTS & PROCEDURAL HISTORY

On March 8, 2004, APS filed suit in the 15th Judicial District Court for the Parish of Lafayette, State of Louisiana. [Doc. No. 56-1, pp. 5–13, Petition for Injunctive Relief]. In its petition, APS sought to enjoin CCI and its employees from, *inter alia*, engaging in unfair trade practices, and utilizing APS's confidential and proprietary information such as, *inter alia*, APS drawings and designs. *Id.* at p. 11. On May 18, 2004, the United States Patent and Trademark

Office issued to APS its Patent No. US 6,736,166 B2 (hereinafter the "'166 Patent"), which governs multiple claims pertaining to a casing spacer design. [Doc. No. 56-2, p. 10].

APS filed an Amended and Restated Petition in December 2004, alleging, *inter alia*, breach of confidentiality claims, misappropriation of trade secret claims, and duplication of APS's designs for casing spacers. [Doc. No. 56-1, pp. 24–41]. On May 4, 2005, after briefings and a hearing, the trial court granted CCI's motion for summary judgment and dismissed with prejudice all claims brought by APS against CCI. *Id.* at pp. 56–57, state court Judgment (hereinafter the "2005 Judgment"). The Third Circuit Court of Appeal affirmed the trial court's grant of summary judgment and dismissal of APS's claims. *Id.* at pp. 58–71. APS filed an application for supervisory writ of certiorari with the Supreme Court of Louisiana. *Id.* at pp. 72–102. While the writ application was pending, the parties executed a "Mutual Release of All Claims" on November 13, 2007, (hereinafter the "2007 Release Agreement"), whereby the parties released:

> any and all claims, demands, causes of action, rights of action, reconventional demands, known and unknown, anticipated and unanticipated, which includes all claims whatsoever existing at any time in the past and/or existing at present, up to, and through, the date that is hereinabove first written, including but not limited to those claims and reconventional demands asserted, or which could have been asserted, or which could have been asserted, in [the previous state court actions].

*Id.* at pp. 103–06.

On August 8, 2014, APS filed the instant suit alleging, *inter alia*, that CCI was infringing one or more claims of APS's '166 Patent "by continuing to make, use, offer to sell and/or sell casing spacers and/or practice methods of use of same, embodying the patented invention." [Doc.

No. 1, para. 4]. APS filed an answer raising affirmative defenses, including that CCI's claims are barred "under the doctrines of res judicata, settlement and compromise." [Doc. No. 10, p. 3].

On July 14, 2017, CCI filed the instant motion for summary judgment, claiming that the doctrine of res judicata barred APS's patent infringement claims because these claims existed at the time of the 2005 Judgment in the state court action and also existed at the time the parties executed their 2007 Release Agreement. [Doc. No. 57]. APS opposes the motion, claiming there are disputed issues of material fact as to whether APS's patent infringement claims existed at the time of the 2005 Judgment and 2007 Release Agreement, and whether the patent infringement claims arose out of the transaction or occurrence that was the subject matter of the earlier litigation. [Doc. No. 67, p. 5]. APS also claims that there are exceptional circumstances that justify relief from the res judicata effect of an earlier judgment and settlement. *Id.*

On September 8, 2017, APS cross-moved for partial summary judgment seeking dismissal of CCI's affirmative defense that the patent infringement claims are barred by res judicata as a result of the 2005 Judgment or by the parties' 2007 Release Agreement. [Doc. No. 72]. APS asserts that res judicata (claim preclusion) does not bar APS from bringing its patent infringement claims in federal court because the state court lacked subject matter jurisdiction to hear patent infringement claims. *Id.* APS also asserts that the 2007 Release Agreement does not bar APS from bringing patent infringement claims that arose after the date of the 2007 Release Agreement because the agreement only released past and present claims that existed up to, and including, the date the release was executed. *Id.* CCI opposes the motion arguing that res judicata (issue preclusion) defeats summary judgment in favor of APS because the state court made findings of fact that defeat APS's current patent infringement claims. [Doc. No. 76, p. 5]. CCI

also claims that the parties' 2007 Release Agreement encompassed future claims, and therefore, the current patent infringement claims are barred by that agreement. *Id.*

## II. LAW & ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Topalian*, 954 F.2d at 1131. In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation marks and citations omitted).

### B. Analysis

Both parties move for summary judgment on CCI's affirmative defense of: (1) res judicata based on the prior state court judgment and (2) the preclusive effect of the parties' 2007 Release Agreement. The Court considers each basis in turn.

*1. Res Judicata*

CCI moves for summary judgment based on the res judicata principles of claim preclusion, claiming that all of the essential elements are satisfied under Louisiana law. [Doc. No. 57-1, pp. 10–15]. APS disputes that all essential elements are satisfied, claiming that there are genuine disputes as to whether APS's patent infringement claims existed at the time of the 2005 Judgment and whether APS's patent infringement claims arose out of the transaction or occurrence that was the subject matter of the state court litigation. [Doc. No. 67, p. 5]. APS also cross-moves for partial summary judgment on the issue of CCI's affirmative defense of res judicata, claiming that the state court did not have subject matter jurisdiction over claims arising under patent laws, making the doctrine of res judicata inapplicable. [Doc. No. 72]. CCI opposes the motion, arguing that APS does not show that res judicata is inapplicable under a theory of issue preclusion. [Doc. No. 76, pp. 11–15]. In its reply to CCI's opposition to the cross-motion, APS further argues that the principles of res judicata on issue preclusion, likewise, do not apply. [Doc. No. 80, pp. 7–11].

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738). A claim arising under a law which provides exclusive jurisdiction to the federal courts does not

necessarily make § 1738 inapplicable. *Id.* For example, the Supreme Court has held that a state court judgment barred a subsequent patent suit based on the principles of issue preclusion. *Id.* at 381 (citing *Becher v. Contoure Labs. Inc.*, 279 U.S. 388 (1929)).

When determining whether a claim arising within the exclusive jurisdiction of federal courts is barred by a prior state court judgment, the Supreme Court, in *Marrese*, directed courts to first apply the state's preclusion laws. *Id.* at 383. Only if the claim is barred by the state's preclusion laws should a court consider whether there is an exception to § 1783 to refuse the preclusive effect to the state court judgment. *Id.* Accordingly, the Court looks to Louisiana's res judicata law to determine whether APS's patent infringement claim is barred by the prior state court judgment. *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000) (citing *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096–97 (5th Cir. 1995); *Marrese*, 470 U.S. at 383.

Louisiana's res judicata statute provides, in relevant part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
> . . .
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
> (3) A judgment in favor of . . . the defendant is conclusive, in any subsequent action between [the same parties] with respect to any issue actually litigated and determined if its determination was essential to that judgment.

La. Rev. Stat. 13:4231. The statute, titled "Res Judicata," "include[s] both claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp.*, 2001-0993, p. 6 (La. App. 1 Cir. 7/3/02); 867 So.2d 709, 713. The Fifth Circuit has held that federal jurisprudence may be consulted for guidance in interpreting Louisiana's res judicata

6

principles because the Louisiana statute is modeled on federal doctrine and the Restatement of Judgments. *Lafreniere*, 221 F.3d at 808 (citing *Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.*, 631-32, pp. 11–12 (La 1/16/96); 666 So. 2d 624, 631; *Goodman v. Spillers*, 28933, p. 8 (La. App. 2 Cir. 12/23/96); 686 So. 2d 160, 166–69). The Court first considers the parties' motions for summary judgment on the issue of claim preclusion.

To prevail on an affirmative defense of res judicata under a theory of claim preclusion, the party urging res judicata must prove by a preponderance of the evidence, *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 437 (5th Cir. 2000) (citing *Greer v. Louisiana*, 24,552 (La. App. 2 Cir. 3/31/93); 616 So. 2d 811, 815), that: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Wooley v. State Farm Fire and Cas. Ins. Co.*, 2004-0882, p. 36 (La. 1/19/05); 893 So. 2d 746, 771.

To be valid, a judgment "must have been rendered by a court with jurisdiction over the subject matter." *Kelty v. Brumfield*, 93-1142 (La. 2/25/94); 633 So. 2d 1210, 1215 (citing La. Rev. Stat. 13:4231, cmt. (d)). Moreover, "[a] claim is not barred by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim." *Id.* (citing La. Rev. Stat. 13:4231, cmt. (d) and Restatement (Second) of Judgments § 26(1)(c) (1982)). The Restatement (Second) of Judgments § 26(1)(c) provides an exception to the rule that a claim is extinguished under a theory of claim preclusion when "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts[.]"

7

Finding that the challenged claim was subject to the exclusive statutory jurisdiction of an administrative agency, and not within the jurisdiction of the courts, the Supreme Court of Louisiana, in *Kelty*, held that the prior state court judgment was invalid and had no res judicata effect. *Kelty*, 93-1142 (La. 2/25/94); 633 So. 2d at 1219. Although *Kelty* involved a state court judgment that disposed of claims outside of its jurisdiction, the Court finds its reasoning and reliance on the Restatement (Second) of Judgments § 26(1)(c) is equally applicable to render a judgment invalid as to a previously un-litigated claim that could not have been litigated in the chosen forum due to lack of subject matter jurisdiction. Therefore, the Court determines that Louisiana's res judicata law does not bar subsequent federal claims that could not have been brought in state court. Accordingly, the Court need not move to the next step outlined in *Marrese*.

Applying this law to the facts of the instant case, claims arising under the patent laws of the United States are within the exclusive jurisdiction of federal courts. 28 U.S.C. § 1338(a). Accordingly, Louisiana state courts do not have jurisdiction over patent infringement claims, and, therefore, any state court judgment would not be valid to preclude subsequent patent claims under a theory of claim preclusion.

CCI agrees that the state court did not have subject matter jurisdiction over APS's patent claims, and, rather than dispute the issue in its opposition to APS's cross-motion for partial summary judgment, instead argues that issue preclusion is a viable affirmative defense under Louisiana's res judicata statute. [Doc. No. 76, p. 5]. Moreover, in its motion for summary judgment on the same issue, CCI makes no argument that the 2005 Judgment is valid as to APS's patent infringement claims. *See* [Doc. No. 57-1, p. 11]. The Court need not consider the parties' arguments as to the other elements because the invalidity of the 2005 Judgment as to patent

8

infringement claims cannot be cured by a finding that the other elements are satisfied. Accordingly, CCI has not carried its burden to show that there is no genuine dispute as to a material fact on the issue of res judicata under a theory of claim preclusion and that judgment should be entered in its favor. Therefore, the Court will DENY CCI's motion for summary judgment in this respect.

However, this conclusion does not require the Court to grant APS's cross-motion for partial summary judgment because an affirmative defense of res judicata may also be viable under a theory of issue preclusion. La. Rev. Stat. 13:4231. In its cross-motion and supporting memorandum, APS only advances arguments that res judicata claim preclusion is not applicable, but makes no mention of issue preclusion. [Doc. No. 72; 72-1]. CCI responds in opposition that APS "focuses narrowly on the facet of res judicata known as claim preclusion" without considering the applicability of issue preclusion under Louisiana's res judicata statute. [Doc. No. 76, p. 11].

Pursuant to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." However, the Fifth Circuit has stated that "Rule 56(c) merely requires the court to give the non-movant an adequate opportunity to respond prior to a ruling." *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004) (citing *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 545 (5th Cir. 2003)) (internal quotations omitted).

Here, CCI raised the issue of issue preclusion in its memorandum in opposition to the motion and provided arguments as to the applicability of issue preclusion. [Doc. No. 76, pp. 11–15]. APS, in turn, responded to this issue in its reply brief, claiming that issue preclusion was inapplicable. [Doc. No. 80, pp. 7–11]. Finally, CCI was granted leave to file a sur-reply in

opposition, responding further on the issue of issue preclusion. [Doc. No. 84, pp. 3–5]. Accordingly, the Court finds that CCI, as the non-movant, was afforded an adequate opportunity to respond and argue its position on the issue of issue preclusion. Therefore, the Court will consider whether the issue is appropriate for summary judgment. However, as the movant, APS retains the initial burden of showing that there is no genuine dispute as to any material fact on the issue of issue preclusion. Fed. R. Civ. P. 56(a).

To prevail on an affirmative defense of res judicata under a theory of issue preclusion, the following criteria must be met: "(1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment." *In re Keaty*, 397 F.3d 264, 270–71 (5th Cir. 2005) (citing *Charpentier v. BG Wire Rope & Slings, Inc.* 174 B.R. 438, 441 n. 1 (E.D. La. 1994)). "[T]he scope of collateral estoppel is circumscribed by the particularized findings of the state court." *Id.* at 271 (citing *Matter of Miller*, 156 F.3d 598, 602 (5th Cir. 1998)).

APS argues that issue preclusion is inapplicable because "issues related to the '166 Patent were neither 'actually decided' nor 'essential' to the prior judgment." [Doc. No. 80, p. 7]. In support, APS contends that, in dismissing APS's claims, the trial court did not mention whether CCI had duplicated APS's casing spacer designs. *Id.* at 10 (citing Doc. No. 80-1, pp. 18, 25). APS further argues that there is no evidence that the casing spacers referenced in the state court suit are the same type of casing spacers at issue in the instant suit because "APS manufactured numerous types of casing spacers, including models that did not incorporate the design from the '166 Patent" and because the state court petition did not refer to casing spacers that "utilize the '166 Patent." *Id.* (citing Doc. No. 28-1, paras. 6–7).

10

Contrary to APS's assertions, CCI claims that the 2005 Judgment stated that "there is no genuine issue of material fact as to any claim presented by [APS]," which means that the court: (1) rejected APS's argument that CCI 'duplicated' APS designs, and (2) found that CCI did not breach an employment agreement by allegedly taking proprietary and confidential information." [Doc. No. 76, p. 13 (citing Doc. No. 56-1, p. 56)]. CCI further cites APS's application for a supervisory writ of certiorari to the Supreme Court of Louisiana where it claims APS "raised this issue in its appeal briefs as a patent issue, which further illustrates that the allegation was actually litigated." *Id.* (citing Doc. No. 56-1, pp. 84–85).

An issue is "actually litigated" when it is "raised, contested by the parties, submitted for determination by the court, and determined." *In re Keaty*, 397 F.3d at 272 (citing *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 – 60 (5th Cir. 1971); Restatement (Second) of Judgments § 27 cmt. d (1982)). Louisiana courts of appeal have stated that "[i]dentification of issues actually litigated shall be determined not solely from the pleadings but also by examining the entire record in the first suit." *Lee v. Twin Bros. Marine Corp.*, 2003-2034 (La. App. 1 Cir. 9/17/04), 897 So.2d 35, 37) (citing *Ebey v. Harvill*, 26,373, p. 3 (La. App. 2 Cir. 12/7/94), 647 So.2d 461, 464).

The 2005 Judgment dismissed all of APS's claims after "[c]onsidering the pleadings, memoranda of law, affidavits, exhibits, law, and arguments of counsel." [Doc. No. 56-1, p. 56]. APS's application for a supervisory writ of certoriari shows that it argued that the trial court and the court of appeal erred by not viewing the evidence in the light most favorable to APS, referencing an APS patent for a casing spacer with which, it contends, some of the defendants had been involved and that there was evidence that CCI duplicated plastic runners and a casing spacer. *Id.* at 84–85. Considering these portions of the state court record, the Court finds that

11

there is a genuine dispute as to whether the issue of whether CCI duplicated APS's designs protected by the '166 Patent was actually litigated in the state court lawsuit.

Next, APS claims that a finding that CCI duplicated APS's casing spacer design was not an essential element because the elements for a claim of misappropriation of a trade secret and the elements for a claim of patent infringement are different and the prior judgment could have been "for any number of reasons, but that would not translate to a finding that there was no duplication of a patented design." [Doc. No. 80, p. 11 (citing *Innovative Manpower Sols., LLC v. Ironman Staffing, LLC*, 929 F.Supp. 2d 597, 612 (W.D. La. 2013) (citing La. Rev. Stat. § 51:1431(2); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991)]. CCI claims that in dismissing all of APS's claims, the trial court "necessarily rejected APS's argument that CCI 'duplicated' APS designs." [Doc. No. 76, p. 13 (citing Doc. No. 56-1, p. 56)].

As CCI points out, the transcript of the hearing on the motion for summary judgment at issue in the state court proceeding provides minimal discussion on the issue of whether CCI duplicated APS's casing spacer designs. *See* [Doc. No. 80, p. 5, n. 13]. However, the transcript shows that the parties had briefed the court and introduced evidence and pleadings related to the motion for summary judgment. [Doc. No. 80-1, pp. 2–3]. The state court judge denied APS more time for discovery on any of its claims of misappropriation of trade secrets or breach of confidentiality, which included claims that CCI misappropriated "copies of drawings and manufacturing drawings." *Id.* at p. 18.

The Third Circuit upheld the trial court's grant of summary judgment on the misappropriation of trade secrets and breach of confidentiality claims, stating:

> [i]t was clear at the hearing that APS had no factual basis, nor any proof that there were any trade secrets involved, much less if they were misappropriated[.] Simply, there is no evidence, only unsubstantiated allegations, and that is simply insufficient. There is

12

> no doubt that APS will be unable to meet its burden of proving that a trade secret existed, was misappropriated, or that any confidentiality was breached.

[Doc. No. 56-1, pp. 69–70]. According to the Third Circuit Court of Appeal, one way to misappropriate a trade secret is by "use of a trade secret of another without express or implied consent by a person," under certain circumstances. *Id.* at p. 68 (citing La. Rev. Stat. 51:1431(2)). In its state court petition, APS had claimed that its product designs were trade secrets and confidential information and that CCI was duplicating its designs for casing spacers. [Doc. No. 56-1, pp. 33, 34].

Considering the fact that: (1) in its petition, APS raised the issue of its product designs as trade secrets and confidential information and alleged that CCI was duplicating its designs for casing spacers; (2) there is evidence that the parties briefed the trial court on APS's pending claims; (3) the trial court found that APS did not meet its burden to survive summary judgment on any claim; and (4) the Third Circuit stated that there was no proof to support a misappropriation of a trade secret claim or breach of confidentiality, the Court finds that there is a disputed question of material fact as to whether the 2005 Judgment was based on a determination that CCI did not duplicate casing spacers. Therefore, the Court finds that there are disputed questions of fact as to whether res judicata issue preclusion is available as an affirmative defense. Accordingly, the Court will DENY APS's cross-motion for partial summary judgment on the issue of res judicata based on the prior state court judgment.

2. *Preclusion Pursuant to the 2007 Release Agreement*

Additionally, or in the alternative, CCI moves the Court to enter summary judgment finding that APS's patent infringement claims are barred based on the parties' 2007 Release Agreement. [Doc. No. 57]. CCI claims that APS's patent infringement claims existed at the time that the parties entered into the 2007 Release Agreement, citing the declaration of Eugene

13

Cazayoux with attached exhibits purporting to show CCI's manufacturing of the accused infringing product prior to 2007. [Doc. No. 57-1, p. 17 (citing Doc. No. 29-1)]. Therefore, CCI contends those claims were released pursuant to the language "known and unknown, anticipated and unanticipated," including "all claims whatsoever existing at any time in the past and/or at present, up to, and through" the date that the settlement was executed. [Doc. No. 57-1, pp. 18–19 (citing Doc. No. 56-1, pp. 103–06)]. In opposition, APS claims that CCI has failed to prove that it was manufacturing and selling the accused infringing product prior to the 2007 Release Agreement. [Doc. No. 67, p. 5, 12]. APS asserts that none of the exhibits that CCI cites in support prove that CCI was manufacturing and selling the accused infringing product before the 2007 Release Agreement. *Id.* at pp. 12–19.

In its cross-motion for partial summary judgment, APS moves the Court to find that a defense of preclusion pursuant to the 2007 Release Agreement is inapplicable to claims post-dating the execution date. [Doc. No. 72]. APS asserts that each act of patent infringement gives rise to a separate claim, and the parties only released past and present claims existing up to, and through, the date of execution of the 2007 Release Agreement, November 13, 2007. *Id.* CCI opposes the motion, arguing that the 2007 Release Agreement bars APS's patent infringement claims because the agreement contained language that "encompassed future claims, and APS failed to expressly reserve its patent infringement claims based on future conduct." [Doc. No. 76, p. 5].

Because APS states that "[its] present suit does not allege that CCI's infringement occurred before November 13, 2007 [and that it is not] seeking damages from any infringement prior to November 2007," [Doc. No. 72-1, p. 8], the Court will first determine whether the 2007 Release Agreement precludes patent infringement claims arising after November 13, 2007.

14

"The interpretation of a Settlement Agreement, *i.e.*, a contract, is a question of law," which requires the court to apply state contract law. *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999). Pursuant to its terms, the 2007 Release Agreement is governed by Louisiana law, [Doc. No. 56-1, p. 105], and the parties do not dispute that Louisiana law applies.

Under Louisiana law, "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. Civ. Code. art. 3076 "A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised." La. Civ. Code art. 3080.

Although the meaning and intent of the parties to a written compromise is generally determined from the four corners of the instrument, extrinsic evidence may be considered when disputes arise as to the scope of the agreement. *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94); 630 So. 2d 741, 749 (citing *Moak v. Am. Automobile Ins. Co.*, 45586 (La. 11/6/61); 134 So. 2d 911 (1961). This exception is limited "to cases in which substantiating evidence is presented establishing[, *inter alia*,] that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim." *Id.* (citing *Higgins v. Spencer*, 87-0030 (La. App. 1 Cir. 2/23/88); 531 So. 2d 768, 772, *writ denied*, 532 So. 2d 106 (La. 1988)).

The parties dispute the scope of the agreement. The 2007 Release Agreement provides for the release of:

> **any and all claims**, demands, causes of action, rights of action, reconventional demands, **known and unknown, anticipated and unanticipated, which includes all claims whatsoever existing at any time in the past and/or existing at present, up to, and through the date that is hereinabove first written**, including but not limited to those claims and reconventional demands asserted, or which could have been asserted, in [the underlying actions in state court].

[Doc. No. 56-1, p. 104 (emphasis added)].

APS contends that the alleged infringement had not occurred prior to the 2007 Release Agreement, but even if it had, APS claims that the 2007 Release Agreement is limited to discrete patent infringement claims that were ripe for adjudication prior to, and at the time of, the execution of the agreement. [Doc. No. 72-1, p. 14]. APS cites the affidavit of APS President, Thomas Forlander, to support its position that patent infringement claims relating to the '166 Patent were not known or discussed at the time of the 2007 Release Agreement. [Doc. No. 72-1, p. 21 (citing Doc. No. 28-1)]. In his affidavit, Mr. Forlander states:

> [a]t the time the mutual release was signed, there were no claims for patent infringement in the lawsuit, and I was unaware of any infringing activity on the part of CCI with respect to the '166 Patent. Further, in diligently reviewing the trade materials available online and at trade shows, I had seen no indication that CCI or any other casing spacer manufacturer was infringing the '166 Patent.

[Doc. No. 28-1, p. 4].

CCI claims that the release of claims "in the past and/or existing at present" is modified to include claims that are "anticipated and unanticipated," which makes the release of claims "prospective in nature." [Doc. No. 76, p. 8]. CCI claims this "demonstrates the parties' intent to have full, future peace and to permanently be rid of the litigation related to whether CCI

16

improperly 'duplicated [APS's] designs for casing spacers and mechanical pipe seals.'" *Id.* at p. 9.

The Federal Circuit has held patent infringement to be a continuing tort with each act of infringement giving rise to a separate cause of action. *Augustine*, 194 F.3d at 1371 (citing *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221–22 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1031 (Fed. Cir. 1992)). In *Augustine*, the Federal Circuit stated that discrete acts of patent infringement post-dating a settlement agreement do not, however, "override the unambiguous language of a Settlement Agreement that releases all possible claims related to the matters settled by the agreement." *Id.* at 1372. Further, "[g]eneral [and broad] language . . . have consistently been held by the courts to constitute a waiver of all claims and causes of action 'arising under or by virtue of the contract,' and of all 'claims based upon events occurring prior to the date of the release.'" *Id.* (citing *United States v. William Cramp & Sons Ship & Engine Bldg. Co.*, 206 U.S. 118, 128 (1907); *Johnson, Drake & Piper, Inc. v. United States*, 209 Ct. Cl. 313, 531 F.2d 1037, 1047 (1976)). Moreover:

> [c]onsistent . . . with judicial interpretations of general releases, it is the burden of the parties entering into a settlement agreement to expressly reserve in the agreement any rights that they wish to maintain beyond the date of the settlement of agreement. The Supreme Court stated in *Cramp* that "general language . . . indicates an intent to make an ending of every matter arising under or by virtue of the contract. If the parties intend to leave some things open and unsettled, their intent so to do should be made manifest." [*Cramp*, 206 U.S. at 128.]
>
> Our predecessor court by which we are bound also spoke to this issue and expanded the coverage to possible claims that should have been known at the time of a settlement agreement:
>
>> The rule for releases is that absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release. *And no exception to this rule should be implied for a claim whose*

> *facts were well enough known for the maker of the release to frame a general description of it and request an explicit reservation. Johnson, Drake & Piper*, 531 F.2d at 1047.

*Augustine*, 194 F.3d at 1373 (emphasis in original). "[W]hen dealing with post-settlement claims, the issue becomes not one of when a claim is ripe, but rather whether the 'claimant had or possessed a claim, sufficiently to reserve it from a general release.'" *Id.* (citing *Johnson, Drake, & Piper*, 531 F.2d at 1047).

Applying the precepts set forth by the Federal Circuit under the guidance of Louisiana contract law, the Court finds there is a genuine dispute as to the material fact of whether the parties' intended the scope of the 2007 Release Agreement to include future claims of infringement of the '166 Patent. The 2007 Release Agreement releases unknown and known claims that existed prior to and at the time of the execution of the release agreement. Thus, if APS knew or should have known that it had patent infringement claims sufficient to reserve them from a general release, APS would be barred from bringing the post-settlement claims. *See Augustine*, 194 F.3d at 1373. However, if APS did not or should not have known that it had patent infringement claims at the time of the settlement agreement, that may be sufficient to find "special vitiating circumstances" relieving APS from the preclusive effect of failing to reserve its rights as to claims arising after the execution of the 2007 Release Agreement. *See id.* (citing *Johnson, Drake & Piper*, 531 F.2d at 1047).

APS cites evidence that it was unaware of any patent infringement claims relating to the '166 Patent prior to the 2007 Release Agreement. However, the Court has found, *supra*, that there is a question of material fact as to whether a claim that CCI was duplicating APS's casing spacer design relating to the '166 Patent was actually litigated in the state court lawsuit. Accordingly, the Court will DENY APS's cross-motion for partial summary judgment seeking

dismissal of CCI's affirmative defense that the 2007 Release Agreement bars APS's pending patent infringement claims.

Because the Court has determined that the 2007 Release Agreement only bars APS's patent infringement claims arising after November 13, 2007, if it knew or should have known that it had a claim sufficient to reserve it from a general release, and because APS has stated that it does not allege, or seek damages for, claims that may have arisen prior to November 13, 2017, the only material issue to determine as to CCI's motion for summary judgment on the issue of the preclusive effect of the 2007 Release Agreement is whether APS knew or should have known about the existence of its patent infringement claim at the time of execution. Therefore, the Court assumes for the limited purposes of this Ruling that APS's patent infringement claims existed at the time of the 2007 Release Agreement.

As previously shown, APS President, Thomas Forlander, has stated in his affidavit that:

> [a]t the time the mutual release was signed, there were no claims for patent infringement in the lawsuit, and I was unaware of any infringing activity on the part of CCI with respect to the '166 Patent. Further, in diligently reviewing the trade materials available online and at trade shows, I had seen no indication that CCI or any other casing spacer manufacturer was infringing the '166 Patent.

[Doc. No. 28-1, p. 4]. However, again, as previously found by the Court, there is a question as to whether CCI was duplicating APS's casing spacer design relating to the '166 Patent was actually litigated in the state court lawsuit. Although CCI submits its own affidavits that state that its casing spacer designs have not materially changed since 2001 and that the type of casing spacer at issue has been manufactured and sold for decades, [Doc. No. 57-1, p. 9 (citing Doc. No. 29-2; Doc. No. 29-1)], it is not appropriate for the Court to make credibility determinations at the summary judgment stage, *Anderson*, 477 U.S. at 255. The Court also notes that a claim construction hearing has yet to take place in this matter. Accordingly, the Court will DENY

CCI's motion for summary judgment on the issue of the preclusive effect of the 2007 Release Agreement to claims of patent infringement arising after November 13, 2007, finding a question of material fact exists as to whether APS knew or should have known that its patent infringement claims existed at the time it entered into the 2007 Release Agreement.

**III. CONCLUSION**

For the foregoing reasons, the Court will DENY CCI's motion for summary judgment [Doc. No. 57], and will DENY APS's cross-motion for partial summary judgment. [Doc. No. 72].

Monroe, Louisiana, this 29th day of March, 2018.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE